IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

LESLIE EVANS, III,

    Plaintiff,

v.                                                                 No. 08-cv-1177

ARISE INCORPORATED; ITT
CORPORATION; MCDONALD & MILLER;
CLEAVER BROOKS, INC.; BALTAZAR
P. CARTAGENA; and BILLY J. PACKETT,

    Defendants.

---

ORDER DENYING PLAINTIFF'S MOTION TO REMAND

---

      The Plaintiff, Leslie Evans, III, filed suit against Defendants, Arise Incorporated, ITT Corporation, McDonald and Miller, Cleaver Brooks, Inc., Baltazar P. Cartagena, and Billy J. Packett in the Circuit Court for Henry County, Tennessee. The Defendants then removed the case to federal court pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332 on the basis of diversity of citizenship. The Plaintiff has filed a motion to remand for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, based upon lack of complete diversity of citizenship among the parties. Fo the reasons stated herein, the Court DENIES the Plaintiff's motion to remand.

FACTUAL BACKGROUND

      Leslie Evans worked in maintenance at Dana Corporation's ("Dana") extrusion plant in

Paris, Tennessee. (Docket Entry ("D.E.") No. 1, Ex. A Complaint, at ¶ 9.) Dana manufactures rubber products for the automotive industry. (D.E. 7, Ex. 1 Report, at 2.) In its Paris facility, Dana operated a "2000 built Cleaver-Brooks CB Packaged high-pressure steam, gas/oil fired, 400 horsepower, and 150 pounds per squire inch (psi) firetube boiler," which, along with a second boiler, supplied steam for the plant. (Id. at 1, 3.) On June 18, 2007, an accident involving this boiler resulted in severe injuries to Evans. (D.E. 1, Ex. A Complaint, at ¶ 9.)

The Tennessee Department of Labor ("TDOL") Division of Boiler and Elevator Inspection conducted an investigation of the accident and prepared a report of its findings. (D.E. 7, Ex. 1 Report.) According to the report, Evans entered the boiler room while making his rounds and noticed that one of the boilers had a "low water condition." When he approached the feed tank and pumps, Evans recalled hearing a loud whistling noise; shortly thereafter, one of the boilers exploded. (Id. at 2.) The boiler was propelled more than a hundred feet, through the industrial roll-up door, and into the center of the manufacturing room floor. (Id.) After the accident, Evans stumbled through a hole created in the outer wall and collapsed. (Id.)

Before Dana began operating the boiler on March 2, 2001, Arise Incorporated ("Arise"), which provides inspection services for boilers, conducted an internal inspection. (Id. at 3.) It also inspected Dana's boiler seven times between September 14, 2002 and January 10, 2007. (D.E. 1, Ex. A Complaint, at ¶ 10; D.E. 7, Ex. 1 Report, at 3.) Billy Packett conducted the inspections until September 16, 2003 at which time Baltazar Cartagena took over responsibility for performing these tasks. (Id.) The records reflect that from September 16, 2004 to January 10, 2007, Cartagena only looked over the interior of the boiler. (Id.) On January 10, 2007, Cartagena did conduct an external inspection, which would have involved testing of all control and safety devices while the boiler was

2

in operation. (Id.) He reported no violations. (Id.)

Matt King, a maintenance supervisor, stated that Dana itself maintains and replaces most boiler controls and safety devices, although some boiler services are handled by outside vendors. (Id.) According to King, Dana replaced some of the controls and safety devices after Arise's January 10 external inspection. (Id.) King also stated that, prior the accident, the primary low-water fuel cutoff/pump controller was scheduled to be changed because the controller had been failing to turn off the feed to the boiler, which would cause flooding. (Id.) Due to reoccurring flooding, a Dana employee disconnected the modulating feed controller from the feed valve. (Id.) King estimated that Dana maintenance personnel monitored the boiler about every hour to an hour and a half, but, because Dana did not maintain a boiler operation log, there was no written record of the monitoring. (Id. at 4.)

TDOL's subsequent investigation also found that the bypass valve connected to the modulating feed valve had been opened halfway, the auxiliary low-water fuel cutoff relay–which served as a backup to the primary cutoff–had been replaced, the float assembly had a bent and broken spring, a modulating feed controller had been disconnected, an improper relay had been installed, a low-water cutoff had been removed, light bulbs for visual alarms had blown or were missing, and audible alarms were absent. (Id. at 4-5.) After its investigation, TDOL concluded that "the main cause of the boiler accident was improper maintenance and the lack of operational procedures of the boilers. In addition, removal and replacement of critical controls and safety devices, along with the lack of proper training and qualified personnel equally contributed to the occurrence of the accident." (Id. at 6.)

In his lawsuit, Evans has asserted several theories of recovery against the Defendants,

3

including negligence, negligent inspection, and products liability. (D.E. 1, Not. of Removal, Ex. A Complaint.) He seeks damages for lost wages, medical expenses, pain and mental anguish, and disfigurement in the amount of $5,000,000. (Id. at ¶¶ 38-39.)

## JURISDICTION ANALYSIS

A case initially filed in state court may be removed to federal court pursuant to 28 U.S.C. §§ 1441 and 1446: "Any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court." 28 U.S.C. § 1441(a). When federal question jurisdiction is lacking, however, a case may be removed "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). Here, based on the face of the complaint, removal would not be permitted because one of the Defendants, Packett, resides in Tennessee, which is also the state of the Plaintiff's domicile. This non-diverse Defendant would normally preclude removal under 28 U.S.C. § 1441(b), but the Defendants argue that the joinder of Packett by Plaintiff was solely for the purpose of avoiding removal under § 1441.

The Sixth Circuit has recognized that "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." Coyne ex rel. Ohio v. Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999) (citation omitted). However, the party removing the case must establish that the joinder was a subterfuge. Alexander v. Elec. Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1994). To prove fraudulent joinder, "the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." Coyne, 183 F.3d at 493 (citing Alexander, 13 F.3d at 949). "There can be no fraudulent joinder unless it be clear

4

that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law." Alexander, 13 F.3d at 949 (quoting Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir. 1968)). If there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved," then remanding the case to state court is appropriate. Id.; see also Coyne, 183 F.3d at 493 (stating that a "colorable basis for predicting that a plaintiff may recover against nondiverse defendants" requires remand); Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C., 176 F.3d 904, 907 (6th Cir. 1999) (holding that "the inquiry is whether [plaintiff] had at least a colorable cause of action against [the defendant]"). "Any disputed questions [of] fact[] and ambiguities in the controlling state law [should be resolved] . . . in favor of the nonremoving party." Alexander, 13 F.3d at 949 (citing Carriere v. Sears Roebuck & Co., 893 F.2d 98, 100 (5th Cir. 1990)). In other words, "[a]ll doubts as to the propriety of removal are resolved in favor of remand." Coyne, 183 F.3d at 493. A plaintiff's motive in joining nondiverse defendants is immaterial to determining whether joinder was fraudulent. Jerome-Duncan, Inc., 176 F.3d at 907 (citation omitted). Evans's claims are based in state law so the Court must look to the law of Tennessee to determine whether Packett was fraudulently joined. Id.

The complaint alleges that Packett's "negligent[] and/or wanton[]" inspections of the boiler proximately caused the Plaintiff's injuries. (D.E. 1, Not. of Removal, Ex. A Complaint, at ¶ 35.) Because the jurisdictional question hinges on fraudulent joinder this Defendant, the Court must analyze whether this theory of recovery would provide an "arguably . . . reasonable basis for predicting that the state law might impose liability on the facts involved." Alexander, 13 F.3d at 949. The Defendants argue that Packett's inspection could not have caused Evans's injuries because he last inspected the boiler more than three years before the explosion, and the boiler had been

5

inspected several times since then. (D.E. 13, Def.'s Response, at 2.) Further, the Defendants note that, under Tennessee law, certificates of inspection are only valid for about one year, which would mean that the certificate issued by Packett expired long before the date of the accident. See Tenn. Code Ann. § 68-122-110(a)(1) (stating that "[p]ower boilers shall be inspected annually both internally and externally while not under pressure, and shall also, if possible, be inspected externally while under pressure approximately six (6) months following the date of each internal inspection"); § 68-122-111 (stating that inspection certificates are "valid for not more than fourteen (14) months"); see also § 68-122-112 ("It is unlawful for any person, firm, partnership or corporation to operate a boiler under pressure in this state without a valid inspection certificate."). In light of these statutes, the Defendants argue that "[e]ven assuming . . . Packett's inspection in 2003 was negligently performed, Dana could not operate the boiler after the inspection certificate lapsed unless it had other inspections separately performed." (D.E. 13, Def.'s Response, at 8.)

The Tennessee Supreme Court has not specifically addressed the requirements for a claim of negligent inspection. See Myers v. United States, 17 F.3d 890, 902 (6th Cir. 1994). Federal courts analyzing allegations of negligent inspection under Tennessee law, however, have previously applied Section 324A of the Restatement (Second) of Torts ("Restatement"). See Myers, 17 F.3d at 902; Gaines v. Excel Indus., Inc., 667 F. Supp. 569, 571 (M.D. Tenn. 1987); see also Raymer v. United States, 660 F.2d 1136 (6th Cir. 1981) (finding that, if it were to address the issue, the Supreme Court of Kentucky would impose the requirements of Section 324A of the Restatement when evaluating a cause of action based on negligent inspection); Lemar v. United States, 580 F. Supp. 37, 40 (W.D. Tenn. 1984) (stating that Tennessee courts would apply Section 324A). The Tennessee Supreme Court has cited favorably to Section 324A, though under circumstances not

6

involving negligent inspection. Biscan v. Brown, 160 S.W.3d 462, 483 (Tenn. 2004). Additionally, Section 324A has been applied by the Tennessee Court of Appeals in a case involving allegations of negligent inspection resulting in an industrial accident. King v. Lumberman's Underwriting Alliance, Inc., 1989 Tenn. App. LEXIS 183 (Tenn. Ct. App. Mar. 15, 1989); see also Collins v. Arnold, No. M2004-02513-COA-R3-CV, 2007 Tenn. App. LEXIS 717, *42 (Tenn. Ct. App. Nov. 20, 2007) (holding that "Section 324A, including subsections (a) through (c), establishes the law in Tennessee regarding liability under a duty that is voluntarily assumed"); Lett v. Collis Foods, Inc., 60 S.W.3d 95, 104-05 (Tenn. Ct. App. 2001). Thus, the Court is of the opinion that the Tennessee Supreme Court would apply, in the appropriate case, the Restatement of law as the applicable standard for negligent inspection under Tennessee law.

Section 324A of the Restatement[1] provides as follows:

One who undertakes gratuitously or <u>for consideration,</u> to render services to another which he should recognize as necessary for protection of third persons or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect[2] his undertaking, if
    (a) his failure to exercise reasonable care increases the risk of such harm, or
    (b) he has undertaken to perform a duty owed by the other to the third person, or
    (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

(emphasis added). Should the Plaintiff's alleged facts establish a claim of negligent inspection

---

[1] Some courts refer to this section of the Restatement as an extension of the "good Samaritan" doctrine. Raymer, 660 F.2d at 1143.

[2] Apparently, "protect" was supposed to have been written as "perform." See Hill v. U.S. Fid. & Guar. Co., 428 F.2d 112, 115 n.2 (5th Cir. 1970) (stating that "[t]he reporter for this edition of the Restatement, by a letter to counsel furnished to this court, has verified that the word 'protect' which appears at this point is a typographical error and should read 'perform'").

against Packett through any one of the above three situations, he would not have been fraudulently joined. For the purpose of this determination, the Court will assume that Packett's inspection of Dana's boiler on September 16, 2003, was conducted in deviation from the proper standard of care. See Alexander, 13 F.3d at 949 (stating that disputes of fact should be resolved in favor of the nonremoving party); (see also D.E. 1, Ex. A Complaint, at ¶¶ 35-36 (contending that Packett "negligently and/or wantonly performed these inspections," which proximately caused the Plaintiff's injuries).) Negligence alone, however, is not sufficient to satisfy Section 324A because the plaintiff must also show that one of the three alternative bases for imposing a duty also existed. Myers, 17 F.3d at 902.

First, the facts do not show that Packett's negligent inspection increased the risk of the boiler exploding. See Restatement 2d § 324A(a). Inspection is generally a passive act, and the Plaintiff does not allege that Packett altered the physical condition of the boiler. See, e.g., Patentas v. United States, 687 F.2d 707, 716-17 (3d Cir. 1982) (stating that "'increased risk' means some physical change to the environment or some other material alteration of the circumstances"); Howell v. United States, 932 F.2d 915, 918-19 (11th Cir. 1991) (concluding that "a risk is only increased when a nonhazardous condition is made hazardous through the negligence of a person who changed its condition or caused it to be changed") (quotations and citations omitted). Any assertion that Packett increased the risk of the boiler exploding would necessarily be tied to a reliance argument, which is addressed by subsection (c).

Second, the Plaintiff's allegations reflect that Packett, acting on behalf of Arise, undertook a statutory duty that was owed by Dana to third persons. Namely, Tennessee law imposed a duty upon Dana to have its boilers inspected approximately every six months, presumably to ensure the

safety of its workers. Tenn. Code Ann. § 68-122-110. Dana then contracted with Arise to perform the required inspections, which Arise delegated to Packett. (D.E. 7, Ex. 1 Report, at 3.) Although this arrangement ostensibly meets the criteria of Section 324A(b) in a general sense, this conclusion does not end the Court's inquiry. In order to determine liability under the Restatement, the Court must next consider the scope of the duty undertaken by Packett. See Homer v. Pabst Brewing Co., 806 F.2d 119, 121 (7th Cir. 1986) (stating that the scope of a duty under Section 324A is limited to the "extent actually assumed by the defendant"). This statutory duty is conveniently detailed at section 68-122-110 of the Tennessee Code Annotated: "Power boilers shall be inspected annually both internally and externally while not under pressure, and shall also, if possible, be inspected externally while under pressure approximately six (6) months following the date of each internal inspection." Tenn. Code Ann. § 68-122-110(a)(1). This statute clarifies that Packett was given the task of inspecting the boiler, ensuring that its condition complied with state law, and, if so, issuing an inspection certificate that would be "valid for not more than fourteen (14) months." § 68-122-111. In other words, Packett assumed a duty to assess whether Dana's boiler would be operational–based on state safety criteria–for six to fourteen months. Thus, assuming that Packett's September 16, 2003 inspection was negligently conducted, the breach of his assumed duty could not be said to have caused the Plaintiff's injuries occurring on June 18, 2007, more than three years after Packett's last inspection. (D.E. 1, Ex. A Complaint, at ¶ 9.) The Tennessee Code does not provide that a single inspection will ensure compliance with boiler regulations for an undetermined time in the future, and, inferentially, an inspector does not guarantee the safety of a boiler indefinitely. Rather, the applicable state statute indicates that a boiler inspector certifies compliance for six to fourteen months, which reflects the scope of the duty that was undertaken by Packett. §§ 68-122-110, 111.

9

Thus, even if Packett breached a duty established by Section 324A, this breach could not have caused the Plaintiff's injuries.

Finally, subsection (c) does not apply for similar reasons. Because Tennessee law clearly provides that inspection certificates are only valid, at maximum, for fourteen months, it would not be reasonable for companies, such as Dana, to rely on inspectors' assessments for longer than the period prescribed by the statute. Myers, 17 F.3d at 904 (holding that subsection (c) does not apply where reliance would be "unreasonable and unjustified"); Moody v. United States, 774 F.2d 150, 157 (6th Cir. 1985) (stating that reliance is unreasonable where it is precluded by clear statutory or regulatory language). In fact, Dana subsequently arranged for Arise to inspect its boiler numerous times, which indicates that the manufacturer did not rely on Packett's assessment after his inspection certificate expired. Myers, 17 F.3d at 903 (stating that the reliance must have caused a party "to forgo other remedies or precautions against the risk") (quoting Restatement § 324A cmt. e). Because Dana could not have reasonably relied on–and apparently did not detrimentally rely on–Packett's assessment in operating the boiler on June 18, 2007, the criteria set in Section 324A(c) of the Restatement are not met under these circumstances.

With regard to the Plaintiff's negligent inspection claim against Packett, the Court finds that "there can be no recovery under the law of [Tennessee] on the cause alleged or on the facts in view of the law." Alexander, 13 F.3d at 949. Thus, the Court holds that Packett has been fraudulently joined. When the fraudulently joined defendant is not considered, complete diversity among the parties exists, and the case falls within the subject matter jurisdiction of this Court. See 28 U.S.C. § 1332(a)(1). Additionally, because the Plaintiff has failed to state a claim under Tennessee law against Packett, this Defendant is hereby dismissed from the lawsuit.

## CONCLUSION

For the reasons articulated herein, the Court **DENIES** the Plaintiff's motion to remand and dismisses the claims against Defendant Packett.

IT IS SO ORDERED this 30th day of December, 2008.

                              s/ J. DANIEL BREEN
                              UNITED STATES DISTRICT JUDGE